IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WALEAK ROBERT CHANDLER** | : | |
|     **Plaintiff,** | : | |
| | : | |
|     v. | : | **CIVIL ACTION NO. 24-CV-3400** |
| | : | |
| **LAUREN TAMBURINO,** *et al.*, | : | |
|     **Defendants.** | : | |

**MEMORANDUM**

**PEREZ, J.**                                                                                                           **OCTOBER 14, 2025**

*Pro se* Plaintiff Waleak Robert Chandler, a pretrial detainee currently housed at the Northampton County Prison ("NCP"), asserts Fourteenth Amendment claims pursuant to 42 U.S.C. § 1983 in connection with the alleged denial of adequate medical care while housed at NCP. Before the Court is the Motion to Dismiss the Amended Complaint filed by two Defendants employed by the prison's medical provider, PrimeCare Inc.: Lauren Tamburino, the Medical Director; and Paulina Foley, a Physician's Assistant. For the reasons that follow, Defendants' Motion will be denied.

**I.      FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**[1]

The Court previously granted Chandler leave to proceed *in forma pauperis* and dismissed his initial Complaint upon screening for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). *See Chandler v. Hoffman*, No. 24-3400, 2024 WL 4543065, at *3 (E.D. Pa. Oct. 22, 2024). The Court dismissed Chandler's Fourteenth Amendment denial of medical care claims as undeveloped and not plausible.

---

[1] The facts are taken from Chandler's Amended Complaint (ECF No. 7). The Court adopts the pagination supplied by the CM/ECF docketing system.

Chandler then returned with an Amended Complaint. (ECF No. 7.) In it he asserts that since his arrival at the NCP on March 5, 2023, he was treated and prescribed medication by Foley. (Am. Compl. at 8, 13.) At some point during his detention, Foley allegedly prescribed the wrong medication to Chandler, which caused Chandler to develop "severe seizures, high blood pressure, dizzy spells, and minor cuts." (*Id*. at 15.) Once Chandler was diagnosed as having seizures, Foley also allegedly denied him "proper treatment," including assignment to a housing unit that did not place him at risk for falling. (*Id*.)

Chandler also alleges that Foley failed to provide him his blood pressure medication for two and a half days. (*Id*. at 15-17.) Specifically, on October 2, 2024, Chandler was transported to a hospital to undergo a heart rate stress test. (*Id*. at 15.) He was told by a nurse at the hospital that Tamburino and Foley were advised to withhold his medication prior to the stress test but that he could resume taking the medication after the test concluded. (*Id*.) Chandler completed the stress test at 10:30 a.m. on October 2, 2024; however, he did not receive his blood pressure medication until 9:30 p.m. on October 4, 2024. (*Id*. at 15, 17.) During the time the medication was withheld, Chandler made "countless complaints" to nurses and recorded numerous high blood pressure readings. (*Id*. at 17.) Also during this time, Chandler notified Foley that he needed to take his medication, and he was advised by other nurses administering medication to inmates that they too notified Foley about his concerns. (*Id*. at 16.)

Chandler alleges that Tamburino failed to "maintain[] proper order over staffing" and violated PrimeCare policies and customs by denying him medical treatment for non-medical reasons. (*Id*. at 14.) In particular, Tamburino allegedly advised her staff that they need not respond to inmates' emergency medical needs during the nighttime and while on their breaks. (*Id*.) This caused Chandler's "medical conditions to become more severe." (*Id*.) Tamburino

also allegedly failed to respond to Chandler's "verbal complaints" and grievances about his need for medical treatment for high blood pressure. (*Id*.) Chandler states that, on "several occasions," he made verbal complaints to Tamburino about his "medical needs" and how they were denied for non-medical reasons, such as the officers being on break, disliking the inmates' criminal charges, or believing the inmate complains too much. (*Id*.) He also states that Tamburino did not respond to his grievances and that she "disregarded" one he filed May 23, 2024. (*Id*.) Based on these allegations, Chandler asserts Fourteenth Amendment denial of medical claims and seeks money damages. (*Id*. at 5.)

In a January 17, 2025 Order, the Court dismissed with prejudice Chandler's claims against PrimeCare President Carl Hoffman, and directed that his Amended Complaint be served on Tamburino and Foley. (*See* ECF No. 8.) Defendants Tamburino and Foley filed a Motion to Dismiss the Amended Complaint (ECF No. 15) to which Chander filed a Response (ECF No. 18).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. "A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). It is the defendants' burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). To determine whether a complaint filed by a *pro se* litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible . . . claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally).

### III.  DISCUSSION

Chandler asserts Fourteenth Amendment denial of medical care claims against Tamburino and Foley under § 1983, the vehicle by which federal constitutional claims may be

brought in federal court.[2]  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

Because Chandler was a pretrial detainee when the events described in the Amended Complaint occurred, his claims are analyzed under the Due Process Clause of the Fourteenth Amendment.  *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).  To state a claim based on the failure to provide medical treatment under the Fourteenth Amendment, a plaintiff must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or

---

[2] In drafting his Amended Complaint, Chandler again checked the boxes on the form he used indicating that he seeks to name the Defendants Tamburino and Foley in their official and individual capacities. (Am. Compl. at 2-3.)  Official capacity claims against employees of a company that provides medical services like PrimeCare are not cognizable because PrimeCare is a private entity.  *See Kreis v. Northampton Cnty. Prison*, No. 21-2360, 2022 WL 4236692, at *8 (E.D. Pa. Sept. 14, 2022) (stating that official capacity claims are "inapplicable to suits against private parties where the entity is also susceptible to suit"); *see also Owens v. Connections Cmty. Support Programs, Inc.*, 840 F. Supp. 2d 791, 796 (D. Del. 2012) ("Generally, a suit against a [ ] public officer in his or her official capacity is used to compel that officer to take some official action [and that] concept . . . is inapplicable to suits against private parties where the entity is also susceptible to suit.").  Even if official capacity suits against individuals who work for private companies are cognizable, the suit would, in effect, be one against the company for whom that individual works. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  Since Chandler has not attempted to name that entity, the official capacity claims against PrimeCare employees will be dismissed. *Accord Burk v. West*, No. 21-4968, 2021 WL 5758945, at *2 (E.D. Pa. Nov. 24, 2021).

5

safety." *Id*. at 837. Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).

A.     **Claims against PA Paulina Foley**

PA Paulina Foley seeks to dismiss all claims asserted against her arguing that, at most, Chandler's allegations support only an inference of negligence, which is not a sufficient basis for a Fourteenth Amendment claim. (*See* ECF No. 15-1 at 6.) She also contends that Chandler fails to sufficiently allege her personal involvement in the "mix-up" involving him being denied his blood pressure medication for over two days. (*Id*.) The arguments in support of dismissing the claims against Foley lack merit.

Although Foley is correct that negligence alone does not support a § 1983 claim, *see Canton v. Harris*, 489 U.S. 378, 387 (1989), the Court does not construe Chandler's allegations as limited to negligence. Chandler states that Foley prescribed him the wrong medication that caused him to suffer seizures, high blood pressure, and other conditions. He also alleges that Foley was responsible for withholding his blood pressure medication for more than two days without medical justification. He states that Foley was specifically advised to withhold his blood pressure medication only prior to his stress test but that Chandler should resume taking the medication after the test concluded. He further alleges that the test concluded at 11:30 a.m. on

6

October 2, 2024 but that he did not receive his medication until 9:20 p.m. on October 4, 2024. During the two and a half days, Chandler made numerous requests for his blood pressure medication to nurses, who in turn stated that they relayed his requests to Foley. Chandler also states that he specifically notified Foley of his need for his blood pressure medication. The "[w]ithholding [of] medication needed to control a prisoner's blood pressure for no medical reason may demonstrate deliberate indifference to a serious medical need." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990); *see also Concepcion v. Russell*, No. 25-4479, 2025 WL 2447792, at *4 (E.D. Pa. Aug. 25, 2025) (concluding that plaintiff stated a basis for a deliberate indifference claim where he alleged that nurses repeatedly withheld blood pressure medication from him). Liberally construing the Amended Complaint, Chandler has alleged a plausible inference that Foley knew of his need for blood pressure medication but intentionally refused to provide it. The Court will deny the Motion to Dismiss the claims asserted against Foley.[3]

---

[3] Defendants also argue that because Chandler does not allege facts about falling from a top bunk and sustaining injuries, his claim that he was denied a safe housing unit to address his seizures and risk of falling lacks merit. This argument is not entirely clear. However, to the extent that Defendants contend that Chandler fails to state a Fourteenth Amendment claim because he did not allege harm, the argument is contradicted by the Amended Complaint, wherein Chandler states that he "suffer[ed] countless unwitness[ed] seizures and head injur[ies]." In any event, Chandler need not sustain injuries before requesting housing that safely addresses his medical conditions. "'Courts have found that it can be [a constitutional] violation where an inmate has a serious medical need requiring him to use the bottom bunk, but prison officials are deliberately indifferent to that need.'" *Saunders v. GEO Grp., Inc.*, No. 19-2322, 2019 WL 5558659, at *4 (E.D. Pa. Oct. 25, 2019) (quoting *Whitehead v. Wetzel*, No. 14-51, 2016 WL 356809, at *7 (W.D. Pa. June 2, 2016)); *Wall v. Bushman*, 639 F. App'x 92, 95 (3d Cir. 2015) (*per curiam*) (reversing grant of summary judgment where disputed issue of material fact existed from which a rational factfinder could conclude that prison doctor recklessly disregarded prisoner's need for a lower-bunk assignment or denied the lower-bunk assignment for non-medical reasons)); *see also Guilfoil v. Pierce*, No. 06-493, 2009 WL 688957, at *5 (D. Del. Mar. 16, 2009) ("Refusal of prison officials to assign an inmate with a herniated disc to a bottom bunk may constitute deliberate indifference if the inmate's condition is sufficiently serious.").

### B. Claims against Lauren Tamburino

Tamburino argues that Chandler's claims against her fail because Chandler did not sufficiently allege Tamburino's personal involvement. This argument also lacks merit. As noted above, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Rode*, 845 F.2d at 1207; *see also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). As a supervisor, Tamburino can be liable for Chandler's alleged constitutional harm in two ways. *See Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, she may be liable if she, "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). Second, she may be liable if she "participated in violating [Chandler's] rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

Chandler specifically alleges that he made numerous "verbal complaints" to Tamburino directly about his medical needs, including his high blood pressure, and that his requests for treatment were being denied for nonmedical reasons, such as that prison officials were on a break, "disliked [his criminal] charges," or because Chandler complained too much. (Am. Compl. at 14.) Chandler references a May 23, 2024 grievance to which Tamburino responded.[4]

---

[4] The Court may consider the May 23, 2024 grievance even though it was attached to Chandler's Response to Defendants' Motion to Dismiss and not to his Amended Complaint.

8

(ECF No. 18 at 10.) In the grievance, Chandler complained about his symptoms of high blood pressure and that his requests for medical treatment for the high blood pressure were ignored. (*Id.*)

Although prisoners do not have a constitutional right to the grievance process, *see Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*), the grievance Chandler filed, to which Tamburino responded, reveals Tamburino's knowledge of Chandler's need for medical treatment for his high blood pressure and that he believed he was not getting proper treatment. Together with the numerous "verbal complaints" that Chandler made to Tamburino that went ignored, he has alleged plausibly that Tamburino was personally involved in the denial of his medical care. *See Bowers v. Lensbower*, No. 23-0030, 2025 WL 2645893, at *9 (M.D. Pa. Sept. 15, 2025) (concluding that personal involvement of medical supervisor was properly alleged through supervisor's participation in denying grievances where the plaintiff was "not merely complaining about a past incident" but instead "asserting an ongoing medical issue" that the supervisor declined to address); *see also Concepcion*, 2025 WL 2447792, at *4 (finding allegations that plaintiff filed grievances about his needing treatment for high blood pressure and that the supervisory medical staff "did not take action despite being informed of the problem" were sufficient to support an inference of deliberate indifference). Accordingly, Defendants' Motion to Dismiss Chandler's Fourteenth Amendment claims against Tamburino will also be denied.

IV.   **CONCLUSION**

For the foregoing reasons, the Court will deny the Motion to Dismiss the Amended

---

Chandler references this grievance in his Amended Complaint and the grievance is integral to his claims. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

Complaint filed by Defendants Lauren Tamburino and Paulina Foley.  An appropriate Order follows directing the Defendants to file an answer to the Amended Complaint.

BY THE COURT:

_____
HON. MIA R. PEREZ